E-FILED
Thursday, 04 September, 2008   10:46:30 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No.  07-10119 |
| | ) | |
| JAMES LOVE, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S NOTICE OF EXPERT WITNESS TESTIMONY**

Now comes the United States of America, by and through its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Kirk D. Schoenbein, Assistant United States Attorney, and pursuant to Fed. R. Crim. P. 16(G), hereby provides notice of expert witness testimony that the Government will offer at trial:

1.   **Special Federal Officer William Lynn**, Federal Bureau of Investigation, will be tendered as an forensics expert in the area of Computer Operating Systems and Digital Storage Media and File Structures and Camera Forensics. SFO Lynn will testify as to his education, training, certification and experience in computer and digital media forensics as set forth in his CV as set forth in Discovery pages 509-514.  SFO Lynn will testify regarding the methods, manners, means, and equipment utilized in the recovery of digital evidence from a Memorex CD entitled "K-PICS" and the hard drive from a Gateway 2000 computer which were seized on May 3, 2007 from a basement computer

1

room in the Defendant's residence.  With regard to the recovery of said evidence, SFO Lynn will testify consistent with his forensic examination reports as set forth in Discovery pages 65-71. More specifically, among other things in said reports, SFO Lynn will testify that all of the child pornography photographs of the identified victims and the photographs of similar unidentified persons and that will be offered into evidence and that Defense counsel has been given an opportunity to see were found on said CD and said computer.  SFO Lynn will further testify that all of said photographs were taken by the same Kodak "EasyShare" digital that is referenced in his report and that is connected by serial numbers to the camera box recovered from the Defendant's house although said camera itself was never found.

2.      **Forensic Scientist Ann Marie Midden** will be tendered as expert witnesses in the field of forensic biology and DNA analysis based upon her education, training, certification and experience as set forth in her CV which has been disclosed as Discovery pages 375-77.  FS Minton will specifically testify to her biological analysis and her forensic findings and opinions regarding the sexual assault kit and clothing evidence from the minor EK and the biological standard kit evidence from the Defendant.  That said findings and opinions of FS Minton are set forth in Discovery pages 370-489. Among those findings, FS Midden will specifically testify that through chemical and microscopic analysis semen with sperm was found on the anal and buttock swabbings of EK and that the semen from the anal swabbing determined to be the most appropriate for DNA analysis. Moreover, FS Midden also found indications of semen through chemical analysis from a sample taken from the back panel of EK's underwear, but microscopic examination did not detect any sperm cells.

3.  **Forensic Scientist Debra Minton** will be tendered as expert witnesses in the field of DNA analysis based upon her education, training, certification and experience as set forth in her CV which has been disclosed as Discovery pages 384-86. FS Minton will specifically testify to her DNA analysis and findings and opinions that there is a match between the DNA profile of the semen on sex assault kit anal swabbing taken from EK and the DNA profile of the Defendant as set forth more specifically in Discovery pages 438-89. Moreover, FS Minto will give an overview what DNA is and how it is useful in forensic identification and she will further testify as to the PCR/STR DNA methodology of utilizing DNA for that purpose. Among other things, FS Minton will testify generally as follows:

> a. DNA is the acronym for "deoxyribonucleic acid" which is a molecule that has the structure of a ladder that is twisted in a spiral form called a double helix whereby it has two outer strands that correspond to the two side rails of a ladder with connecting chemical bases that correspond to the rungs of the ladder. Each rung is composed of a pair of chemical bases that occupy each half of the rung. That there are only four chemicals which serve as these bases: Adenine; Thymine, Guanine and Cytosine. For brevity sake, these chemical bases are referred to by their first letters: ATGC, and collectively they constitute the alphabet of the human genetic code. These chemical bases have a bonding property whereby only A and T bond with each other and only G and C bond with each other. Accordingly, the only possible chemical bases, or rungs on the DNA ladder are: AT; TA; GC or CG. As you move along the DNA ladder, it is the sequence of these base pairs that constitutes the human genetic code which directs the physical development of human life and indeed defines us physically as humans. DNA is packed into structures called chromosomes which are located in the nucleus of cells. There are 46 chromosomes in each nucleus and half, or 23, are received from each parent.
>
> b. There are approximately 3.3 billion base pairs, or rungs, in the total human DNA genetic code or genome, and that 99.9% of the order or sequence of the base pairs is identical among all humans. However, that leaves .1% variation within the sequence among individuals and it is this variation that is forensically significant for identification purposes. Specifically, the locations on the ladder

where these sequence variations occur are called "polymorphic loci" and some of them have been identified and named. In the scientific and forensic community, 13 specific locations have been universally accepted as the polymorphic loci that should be analyzed for forensic purposes and each locus is identified in the left hand column of the charts disclosed at Discovery pages 440, 484 and 487.

c. The above-mentioned polymorphic loci consist of a specific sequence that is successively repeated and these repeated sequences are known as Short Tandem Repeats or STRs. Through DNA analysis the number of STRs at these given loci can be determined and because the DNA was inherited from two parents there are two numbers of STRs which can be determined for each locations. The possible combinations of these two numbers are called "alleles". Accordingly, a DNA profile from a particular sample can be produced which gives two numbers at each of the 13 named loci, one number being contributed by each parent. If these numbers are different, such as 15 and 11, then both numbers are listed in the DNA profile chart as "15,11". However, if the numbers at that locus from each parent are the same the chart will only list that number in singular form although it means that both numbers had the same value. Thus, an allele of 15 and15 at a particular loci will be recorded on the profile chart as "15".

d. Once a DNA profile has been developed for the known DNA standards of the subjects involved and for the questioned or unknown DNA sample, then the profiles are compared at each locus. If there is one difference in any of the numbers at a given locus between the known and unknown DNA, then the known DNA can be excluded as being the source of the unknown DNA. For instance, at the D3S1358 locus, if the unknown DNA allele is "13, 15" and the allele of the known DNA at that same locus is "13,16" then the known DNA is excluded as the source of the unknown DNA notwithstanding if there are the same numbers between the profiles at the other 12 loci. To constitute a match, there must be no excluding differences and there must be an identity of all the other loci that were able to be analyzed. Sometimes, because of the small amount of DNA recovered from a scene or a victim not all 13 loci are present in the unknown DNA. However, if there are no exclusions between the loci that are present in the unknown sample compared to the loci of the known standard then an identity or match between the two profiles is a function of the probability of a random match of the loci numbers that were made.

e. In the field of forensic DNA analysis, the frequency of specific alleles (possible STR numbers) at these specific 13 loci among the general population have been studied and a statistical probability of a random match of each number of each allele at each location has been determined. These studies have been specifically done for the white, black and Hispanic populations. Thus, there is a known probability that at the D3S1358 loci there would be a random match that a person would have one of the numbers be 15 and another person would also have a 15. Then there is a separate, independent probability that the second number at the

loci, 14 for instance, would randomly match someone else. Accordingly, the probability that both numbers at that loci would randomly match among two samples is determined by multiplying the probabilities for each individual number randomly matching. This analysis then is done with each of the loci to determine the probability for a match between two samples at each loci. Then when each loci probability has been determined, pursuant to the statistical concept of the product rule of determining the probability of independent occurrences, all of the loci probabilities are multiplied to give an overall probability of a random match of the two entire profiles.

f. To get to the point of determining the alleles at these DNA loci, the DNA first has to be extracted from the submitted standards and unknown exhibits or material. Then it is subject to quantitation whereby a determination has to be made if there is sufficient DNA present to proceed with the analysis. If there is, then the DNA that is present is reproduced or "amplified" to create more DNA for analysis. This process of amplification is called Polymerase Chain Reaction (PCR) and involves alternately heating the DNA and submitting it to a mix of chemicals which ultimately will lead to the specific loci to be analyzed being combined with fluorescent chemical tags which will later illuminate these loci when subjected to a laser. Once the PCR process is done, the now amplified DNA is injected into a metal tube or capillary where it is subjected to an electrical charge through a process called "electrophoresis" and is caused to move through chemical matrix towards an opening where it would be then subjected to the laser. Through an automated process operated by computer software, the data from the laser's interaction with the DNA fragments is interpreted and displayed in a graph in which each loci is represented by a color and the alleles, or the numbers, are represented by peaks with the larger the number being represented by the higher the peak. Once these numbers for each of the loci are determined then the profile is completed for that sample. When all the known and unknown samples have been submitted to this process and the profiles have been completed then the aforementioned comparison and probability analysis is done.

g. FS Minton will testify that the submitted samples in this case as described in her disclosed reports were submitted to this process and that this process resulted in alleles being identified from 9 of the 13 loci in the profile from the semen that was recovered from EK's anal swab. That the failure to obtain alleles for the other 4 loci was a function of the small amount of DNA recovered from the swab and that the amount of DNA that can be recovered from a sex assault swabbing can be a function of actions by the perpetrator or the victim in cleaning the area where the DNA was deposited. FS Minton will testify, as set forth in her DNA profile charts, that all the numbers of each of the 9 loci from the semen sample were identical to all of the numbers of the Defendant's DNA profile at those specific 9 loci and that there were no exclusions. That when the statistical probability of a random match of all the numbers at all the loci of the semen profile and the Defendant's profile is calculated, it results in the following

conservative probabilities of: 1 in 630 trillion whites; 1 in 330 trillion blacks and 1 in 550 trillion Hispanics.

                          Respectfully submitted,
                          UNITED STATES OF AMERICA

                          RODGER A. HEATON
                          UNITED STATES ATTORNEY


By:    s/Kirk D. Schoenbein
        Assistant United States Attorney
        211 Fulton Street, Suite 400
        Peoria, Illinois 61602
        Tel: 309-671-7050
        Fax: 309-671-7259
        E-mail: kirk.schoenbein@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 4, 2008, I filed the foregoing notice with the Clerk of the Court using the CM/ECF system, which will cause a notice and a copy of the foregoing to be sent to: Karl Bryning, Assistant Federal Public Defender.

                                                  s/ Kim Ritthaler
                                                  Legal Assistant